IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DISABLED RIGHTS ACTION COMMITTEE, a Utah non-profit corporation; and BARBARA TOOMER, <br><br> Plaintiffs, <br><br> vs. <br><br> SUNDANCE HOMES, LLC, a Utah Limited Liability Company, *et. al.*, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:07-cv-352 CW |

In this case, Plaintiffs Disabled Rights Action Committee and Barbara Toomer allege violations of the federal and Utah state fair housing statutes against the developer and engineers of a condominium project. In the motion now before the court, Defendants Ken Berg and Sowby & Berg Consultants, Inc., the engineers, seek summary judgment in their favor, arguing that the claims are time barred.[1] For the reasons discussed below, the court agrees that the statute has run on Plaintiffs' claims concludes that the motion should be GRANTED in the moving Defendants' favor.

**BACKGROUND**

In this case, Plaintiffs allege violations of the federal Fair Housing Act and the Utah Fair Housing Act at the Gateway Village, a group of condominiums located in Pleasant Grove, Utah.

---

[1] Plaintiffs have informed the court that they believe Sundance Homes, LLC, the builder in this case, has declared bankruptcy. Assuming that is correct, no party that has appeared in this case has suggested that the automatic stay prevents the court from ruling on this motion.

Construction of the Gateway Village was substantially completed by late October, 2006. Certificates of occupancy were issued by Pleasant Grove for the condominium units at the Gateway Village between August 2004 and October 2006. The last certificates of occupancy issued for condominium units were dated October 24, 2006. Mr. Berg, of Sowby & Berg, performed engineering work for the Gateway Village. Mr. Berg completed his work on that project in early 2005.

Ms. Toomer alleges that she first discovered discriminatory conditions at the Gateway Village on June 16, 2005. She further asserts that she visited Gateway Village again in May 2008 and again encountered inaccessible conditions, and that she intends to visit again. Plaintiffs filed their original complaint on May 29, 2007, naming Sundance Homes, LLC, Gateway Village's builder, as a defendant. The complaint also named in the caption "Does I through X and Roe Entities I through X" as fictitious defendants. The complaint explained that those defendants included "builders, architects, engineers, sales persons, and owners." (Compl., Dkt. No. 2, at ¶ 5.) Plaintiffs filed their First Amended Complaint on June 8, 2009. In this complaint, Plaintiffs adds Mr. Berg and Sowby & Berg as named Defendants. This complaint alleges two causes of action against all Defendants: a violation of the federal FHA and a violation of the Utah FHA.

Mr. Berg and Sowby & Berg have moved for summary judgment in their favor on both claims. First, they argue that the statute of limitations has run on the federal FHA claim. Second, they contend that the Utah FHA should be interpreted in the same way that the federal FHA is interpreted, meaning that the Utah FHA claim is also time barred. Finally, they assert

that the claims against them do not "relate back" as contemplated by Federal Rule of Civil Procedure 15(c). If this proposition is correct, the action against Mr. Berg and Sowby & Berg should be evaluated as being filed on June 8, 2009 and not May 29, 2007.

Plaintiffs agree that the federal FHA and the Utah FHA should be interpreted in the same way. Plaintiffs disagree, however, that the statute of limitations period has run on either the state of federal claim. Moreover, Plaintiffs agree that there is no relation back to the original complaint. Accordingly, the only issue before the court is whether the statute of limitations on a claim against the engineers based on the federal FHA had run as of June 8, 2009.

## ANALYSIS

The federal FHA provides for a private cause of action as one of three means of enforcing its provisions. Specifically, the federal FHA states that "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice. . ." 42 U.S.C. § 3613(a)(1)(A). The specific question in this case is when the statute of limitations for a claim under this provision begins to run against an engineer whose active involvement ends after the construction of a dwelling is complete. As discussed below, there is presently a circuit split over this issue, and the Tenth Circuit has yet to weigh in.

In answer to the key question here, the parties propose two possible starting points. The moving Defendants maintain that the two years starts running after the dwelling is substantially completed. This theory was adopted by the Ninth Circuit in *Garcia v. Brockway*, 526 F.3d 456, 461 (2008), *cert. denied by Thompson v. Turk*, 129 S.Ct. 724 (2008), in which the Ninth Circuit ruled that the statute of limitations on a "failure to design and construct" claim begins "at the

3

conclusion of the design-and-construction phase, which occurs on the date the last certificate of occupancy is issued." 526 F.3d at 461 (citation and internal quotation marks omitted). In a nutshell, the Ninth Circuit's primary reason for adopting this rule was that "failing to design and construct is a single instance of unlawful conduct." *Id.* at 463. The Ninth Circuit concluded that "[i]f Congress wanted to leave developers on the hook years after they cease having any association with a building, it could have phrased the statute to say so explicitly." *Id.*

In coming to this conclusion, the Ninth Circuit considered and rejected other possible starting points for the statute of limitations to begin tolling. *See id.* at 462-466. In particular, the *Garcia* court extensively explained why the date on which "the building defects are cured" was not the appropriate date upon which to start the clock. *Id.* at 461-64.

Under the *Garcia* theory, Plaintiffs' claims are time barred. That is, the last certificates of occupancy for the Gateway Village were issued in October 2006, over two years before the First Amended Complaint was filed.

For their part, Plaintiffs contend that the period begins only after the discriminatory conditions are remedied. The *Garcia* dissent posited that there was a "colorable argument" that this is the correct starting point. *See id.* at 470 n. 2, Circuit Judge Fisher dissenting.[2] *See also Eastern Paralyzed Veterans Ass'n. v. Lazarus Burmn Assocs.*, 133 F. Supp. 2d 203, 212-13 (E.D.N.Y. 2001) (applying this rule). The reasoning of those who would adopt this theory is that the existence of the non-compliant condition is a continuing violation until remedied. *See Garcia*, 526 F.3d at 470 n. 2 and *Eastern Paralyzed Veterans Ass'n.*, 133 F. Supp. 2d at 212-13.[3]

---

[2] The U.S. Department of Housing and Urban Development also appears to have adopted this test in its *Fair Housing Design Manual*, as noted by *Garcia. See* 526 F.3d at 462.

[3] As the court understands Plaintiffs' argument, however, they assert that the continuing violation theory need apply for the court to apply this test. Plaintiffs reason that a flawed design

4

The moving Defendants have not shown any evidence that the conditions that allegedly violate the federal FHA at the Gateway Village have been cured. Accordingly, Plaintiffs' claims would not be precluded by the statute of limitations under this theory.

Not mentioned by either side is a third theory, which instructs courts to determine the starting point for the statute of limitations from the circumstances of each case. The Sixth Circuit announced this test in *Fair Housing Council, Inc. v. Village of Olde St. Andrews, Inc.*, 210 Fed. Appx. 469, 480 (6th Cir. 2006), *cert. denied by WKB Assocs., Inc. v. Fair Housing Council, Inc.,* 552 U.S. 1130 (2008). In *Fair Housing Council*, the Sixth Circuit rejected both *Garcia*'s certificate of occupancy theory and the date of remedy theory.

First, the Sixth Circuit noted that most district courts have refused to adopt the last certificate of occupancy test. *See Fair Housing Council*, 210 Fed. Appx. at 480 (collecting cases). The *Fair Housing Council* court further observed that starting the limitations period immediately after the building was substantially complete would bar some potential plaintiffs before they even attempted to buy or rent units, which does not comport with Congress' remedial intent in the FHA. *See id.*

The *Fair Housing Council* court also rejected the proposition that the statute of limitations does not start until the "noncompliant conditions are remedied." *Id.* The Sixth Circuit explained that:

> We find, however, that the view that the statute of limitations is tolled until the noncompliant conditions are remedied is equally inconsistent with 42 U.S.C. § 3604(f)(1). The Fair Housing Act specifies that the two year limitations period begins to run at the termination of the alleged act of discrimination. In the context of the construction and design of multifamily dwelling units that are inaccessible to disabled

---

is not a violation by itself, but an act that creates a condition that can support "separate and discrete violations" of the FHA. (Pls.' Memo. in Opp'n., Dkt. No. 36, at 3.)

5

>individuals, the discriminatory act occurs during the sale or rental of that unit. Thus, once
>a unit has been sold or rented, the discriminatory act is complete.

*Id.* at 480.

After considering and rejecting these two dates on which to start the limitations period, the Sixth Circuit concluded that "in cases where the plaintiff alleges that the owner of a multi-family housing development failed to design and construct the development so as to make it accessible to disabled individuals, the limitations period will depend on the specific circumstances of each case." *Id.* at 481. Following this legal standard, the *Fair Housing Council* court considered the lower court's ruling that the statute in that case did not begin to run until the last of all the units were sold *See id.* In light of the specific facts involved in that case, the Sixth Circuit concluded that the ruling was appropriate. *See id.*

As already mentioned, the Tenth Circuit has yet to announce which theory it would follow, so the court will follow the most appropriate theory. First, the court shares the view of the *Garcia* court that Congress must have intended some predictable starting and cut off point for defendants facing a design and construction defect claim under the federal FHA. But the court also sees merit in the reasons that the *Garcia* dissent and the *Fair Housing Council* court rejected the certificate of occupancy theory. Of most concern is that the *Garcia* court's theory, while clear and practical, is somewhat difficult to fully square with the language of the federal FHA. For example, say a dwelling that is subject to the FHA and designed in violation thereof is completed in 2004. The designer of the dwelling has no active involvement with the dwelling after that point. The first disabled person to buy the dwelling then comes along in 2010. For six years, the non-compliant conditions of the dwellings had no effect on those occupying and using

it. Yet when an "aggrieved person" finally does enter the scene, the *Garcia* theory means that rather than have two years to bring an action against the designer, she is time barred. Under the *Garcia* test, the time starts to run even if there is no "aggrieved person" involved, which makes the inclusion of those words in § 3616(a)(1)(a) seem superfluous and cuts off rights during a time when no disabled person was being harmed.

At the same time, starting the statute of limitations only after the violating conditions are remedied is also problematic. Most courts to consider this theory, such as *Garcia* and *Fair Housing Council*, have rejected it. As explained in *Garcia*, while § 3616(a)(1)(a) states that the period begins running after "the occurrence or the termination of an alleged discriminatory housing practice. . . whichever occurs last" it seems that a flawed design and construction job may only logically be considered an single occurrence. *See* 526 F.3d at 463. Morever, even accepting Plaintiffs' argument that flawed design and construction are only examples of discriminatory practices, extending this argument to mean that the statute begins anew each time the flaw is encountered, at least by the same plaintiff, would defeat the purpose of having a statute of limitations in the first place.

Given that the parties' proposed theories both appear incongruent with the language of the statute, the court will apply the Sixth Circuit's totality of the circumstances test. In this case, Plaintiffs allege that Mr. Berg and Sowby & Berg's engineering at the Gateway Village led to the alleged violations of the FHA. The undisputed facts show that the last certificates of occupancy were issued in that development in October 2006, after which there is no indication that Mr. Berg and his firm were involved in any way there. Ms. Toomer first encountered discriminatory conditions at the Gateway Village on June 16, 2005. She did not amend her complaint to bring

this action against the moving Defendants until June 8, 2009.

Under the facts of this case, the court finds that the Plaintiffs first became "aggrieved persons" as defined in § 3616(a)(1)(a) in June 2005. Ms. Toomer's subsequent visit to the Gateway Village in 2008, during which she again discovered inaccessible conditions, did not restart the statute of limitations on Plaintiffs' FHA claims because the discriminatory practice "occurred" when Ms. Toomer first visited in 2005. Accordingly, Plaintiffs had to bring their action by June 2007. Because they did not, their federal and state FHA claims are time barred.

## CONCLUSION AND ORDER

For these reasons, Mr. Berg and Sowby & Berg's motion for summary judgment in their favor on both claims (Dkt. No. 34) is GRANTED.

DATED this 28th day of January, 2011.

BY THE COURT:

_____
Clark Waddoups
United States District Judge